UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROSEMARY BOLON**,

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Case No. 5:11 CV 2415

Magistrate Judge James R. Knepp II

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Rosemary Bolon filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 16). For the reasons below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB alleging disability beginning June 5, 2007. (Tr. 67). Plaintiff alleges she is disabled due to degenerative disc disease (DDD), fibromyalgia, peripheral neuropathy, spinal stenosis, arthritis, deep vein thrombosis, and autonomic disorder. (Tr. 94). Plaintiff's claims were denied initially (Tr. 52) and on reconsideration (Tr. 58). Plaintiff requested a hearing in front of an administrative law judge (ALJ). (Tr. 4). After a hearing, where Plaintiff (represented by counsel) and a vocational expert (VE) appeared, the ALJ denied Plaintiff's claims. (Tr. 5-19). The ALJ found Plaintiff had severe impairments but was capable of performing past work

as a school teacher. (Tr. 18). On November 8, 2011, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

Plaintiff, a former elementary and middle school teacher, was 59 years old at the ALJ hearing. (Tr. 34). Because Plaintiff challenges only the portion of the ALJ's decision relating to treating physician Dr. Marek Buczek's opinion and the ErgoScience Physical Work Performance Evaluation Summary (FCE), the Court focuses only on record evidence regarding the same.

### *Dr. Marek Buczek and ErgoScience FCE Report*

Dr. Mark Buczek is an assistant professor of neurology at Case Medical Center, University Hospitals. (Tr. 848). At the request of her primary care physician, Plaintiff sought chronic pain management treatment with Dr. Buczek because she was experiencing "pain all over" and specific pain radiating down her left leg. (Tr. 840-47).

Plaintiff saw Dr. Buczek numerous times between 2008 and 2009. (Tr. 625-646, 840-47). At each visit, he provided a report documenting Plaintiff's pain symptoms and provided a diagnostic treatment plan. (Tr. 625-646, 840-47). However, on none of these occasions did Dr. Buczek render an opinion regarding Plaintiff's functional limitations or daily activities affected by her condition. In general, Dr. Buczek reported normal or unchanged laboratory and diagnostic findings, prescribed pain medication, informed Plaintiff about proper medication application, opined her pain might be psychologically related, and recommended a psychologist specializing in pain management. (Tr. 625-646, 840-47).

On July 3, 2008, Dr. Buczek noted Plaintiff's neck pain and headaches were stable, but Plaintiff reported lower back radiating down her legs. (Tr. 625). An MRI of Plaintiff's lumbar spine revealed no major changes from a previous MRI taken in January 2007 which indicated mild

compression at T11-T12. (Tr. 625). At a follow-up exam, Plaintiff had full motor strength in her hands, knees, elbows, hips, and shoulders, but diminished reflexes in her biceps, triceps, knees, and ankles. (Tr. 630).

In a report dated July 29, 2009, Dr. Buczek noted Plaintiff did not suffer from permanent numbness or weakness in her legs or arms (Tr. 845) and an EMG of her lower extremities revealed her "left leg was entirely normal". (Tr. 847). Dr. Buczek spoke with Plaintiff about a "very extensive workup [] done in the past that was basically nonrevealing." (Tr. 846). Plaintiff responded that "many doctors tell [her] everything is in her head". (Tr. 846). At this point, Dr. Buczek explained the psychosomatic nature of pain conditions and recommended she see a psychologist. (Tr. 846). Dr. Buczek subsequently noted Plaintiff had previously been instructed to see a psychologist but did not comply with the request. (Tr. 846). Dr. Buczek increased the dose of her Duragesic patch and prescribed Percocet for breakthrough pain. (Tr. 846). He strongly suggested Plaintiff continue with home physical therapy. (Tr. 846).

On August 26, 2009, Dr. Buczek opined there "seem[ed] to be a significant psychological overlay contributing to Plaintiff's condition, with possibly some somatoform disorder". (Tr. 842). He noted Plaintiff did not comply with his instruction to see a psychologist specializing in chronic pain. (Tr. 842). He also noted Plaintiff had the same pain complaints but had been applying the Duragesic patches incorrectly. (Tr. 842).

At the request of Plaintiff's counsel, Dr. Buczek filled out a physical residual capacity (RFC) questionnaire on January 26, 2010. (Tr. 835-839). Dr. Buczek indicated Plaintiff's symptoms would frequently or constantly interfere with her attention and concentration during the workday. (Tr. 836). However, Dr. Buczek's answers to the functional limitation questions for the remainder of the

3

questionnaire was "see notes" or "see FCE report". (Tr.835-38). The FCE report was an ErgoScience evaluation performed at Union Hospital by physical therapist Rebecca Allen. (Tr. 849-58). Dr. Buczek did not participate in the study.

The FCE report concluded Plaintiff was "unable to perform" work because of chronic pain. (Tr. 849). On the cover page, a pie chart indicated Plaintiff's participation in the test was eight percent self-limiting. (Tr. 849). On the last page of the report, Ms. Allen concluded "[b]ased on report data, [Plaintiff's] self limiting behavior [] was less than or equal to 20%." (Tr. 857). Ms. Allen further concluded, "combining the results . . . [and] the evidence of self limiting behavior . . . there is weak evidence of low effort and inconsistent behavior." (Tr. 857).

*ALJ Decision*

The ALJ found Plaintiff had the following severe impairments: Fibromyalgia, multilevel DDD (Cervical, Thoracic, and Lumbar Spine), degenerative joint disease of the right knee, right epicondylitis, and degenerative joint disease of the right shoulder. (Tr. 10).

The ALJ specifically addressed Dr. Buczek's RFC questionnaire and stated the following:

> In a physical residual functional capacity questionnaire, [] the [Plaintiff's] physician indicated that her responses to the majority of the questions would be found in the ErgoScience FCE Physical Work Performance Evaluation, which took place on January 12, 2010. [] This evaluation indicated [] [Plaintiff] had demonstrated self-limiting behavior up to 20% of the time because she was in pain []. The evaluation concludes that, on this basis, there is "evidence of low effort and inconsistent behavior"[]. As the questionnaire was not fully completed by [Plaintiff's] physician, and it was based on an evaluation that provided some evidence [Plaintiff] had displayed low effort and inconsistent behavior, this physician's opinion is given no weight.

(Tr. 18).

After consideration of the entire record, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with minor limitations. (Tr. 13). Notwithstanding these

limitations, the ALJ found Plaintiff could perform her past relevant work as a school teacher. (Tr. 18).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a

claimant is disabled:

> 1. Was claimant engaged in a substantial gainful activity?
>
> 2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
>
> 3. Does the severe impairment meet one of the listed impairments?
>
> 4. What is claimant's residual functional capacity and can claimant perform past relevant work?
>
> 5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

### *Treating Physician Rule*

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability; (4) consistency; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d

504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In addition, even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers*, 486 F.3d at 242. Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the

agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

Medical opinions are defined as "statements from physicians . . . that reflect judgements about the nature and severity of [a claimant's] impairments, including . . . symptoms, diagnosis, and prognosis, what [a claimant] can still do despite the impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527(a); 416.927(a). The regulations provide that some statements by physicians – specifically, statements from medical sources that you are "disabled" – are not considered medical opinions, but rather administrative findings that would direct the determination of disability. 20 C.F.R. §§404.1527(d), 416.927(d); *see also* SSR 96-5p, 1996 WL 374183. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine you are disabled. 20 C.F.R. §§404.1527(d), 416.927(d) Rather, these opinions are issues reserved to the Commissioner and an ALJ is not required to give these opinions controlling weight or special significance. *Id*. Nonetheless, an ALJ may not disregard them. "Treating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *6; *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

Plaintiff argues the ALJ erred in assessing the RFC questionnaire provided by treating physician Dr. Buczek – specifically, she alleges the ALJ erred because she misstated the self-limiting behavior results of the ErgoScience FCE report Dr. Buczek referenced in his RFC questionnaire.

Plaintiff contends the ALJ misstated the FCE report when he concluded Plaintiff

"demonstrated self-limiting behavior up to 20%" instead of referencing the eight percent self limiting behavior reported on the cover page of the FCE report. (Tr. 849). By doing so, Plaintiff essentially argues the ALJ's "good reasons" for rejecting Dr. Buczek's opinion are not.

Plaintiff is correct that the ALJ misstated Plaintiff's self-limiting behavior in the FCE report. However, the ALJ's misstatement is harmless[1] because the ALJ provided another reason to afford no weight to the assessment – Dr. Buczek did not complete it.

ALJs are required to provide good reasons for rejecting a treating physician's opinion. In this case, the ALJ did. He gave Dr. Buczek's opinion no weight because he did not actually complete the RFC questionnaire. While the ALJ's reasoning was brief, it was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight". *Rogers*, 486 F.3d at 242; *See also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence rejection of treating physician's opinion satisfied "good reasons" requirement). On the questionnaire, instead of explaining or stating Plaintiff's functional limitations as requested, Dr. Buczek merely indicated Plaintiff would have trouble with concentration and attention and referenced an FCE report he did not prepare. Notably, Dr. Buczek's medical treatment notes indicate normal or unchanged laboratory and diagnostic findings and that Plaintiff's pain was likely psychologically based or due to incorrect application of pain medication patches. (Tr.625-46, 840-47). In addition, Dr. Buczek's treatment regimen for Plaintiff was relatively conservative – self-care physical therapy, pain medication, and instructions to meet with a psychologist. (Tr. 625-646, 840-47).

---

[1]*Despins v. Comm'r of Soc. Sec.*, 257 App'x 923, 931 (6th Cir. 2007) ("Because the ALJ would have arrived at the same disability determination regardless of any misinterpretation of the testimony, any error in this regard was harmless.").

The ALJ correctly observed that Dr. Buczek did not prepare the FCE report, nor did he participate in its administration. Simply put, the FCE report was not Dr. Buczek's opinion. 20 C.F.R. §§404.1527(a); 416.927(a) (Medical opinions are defined as "statements from physicians . . . that reflect judgements about the nature and severity of [a claimant's] impairments, including . . . symptoms, diagnosis, and prognosis, what [a claimant] can still do despite the impairments(s), and [a claimant's] physical or mental restrictions."). Here, Dr. Buczek answered one question about Plaintiff's functional limitations with no explanation and then referenced a report prepared by a physical therapist that was not based on his own judgment.

Further, the purpose of the FCE report was to provide a "disability rating". (Tr. 849). While the Court does not believe the FCE report was Dr. Buczek's statement, in any event, statements from medical sources that you are "disabled" are administrative findings left to the Commissioner. 20 C.F.R. §§404.1527(d), 416.927(d); *see also* SSR 96-5p, 1996 WL 374183.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ provided good reason for rejecting Dr. Buczek's opinion. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

    s/James R. Knepp, II
United States Magistrate Judge